Ms. Dorothy Faircloth Executive Director Board of Osteopathic Medical Examiners Department of Professional Regulation 130 North Monroe Street Tallahassee, Florida 32301
Dear Ms. Faircloth:
This is in response to your request for an opinion on substantially the following question:
 MAY THE FLORIDA BOARD OF OSTEOPATHIC MEDICAL EXAMINERS CONSIDER A PETITION FOR REINSTATEMENT FROM A PERSON WHOSE LICENSE TO PRACTICE OSTEOPATHIC MEDICINE WAS UNCONDITIONALLY REVOKED BY THE BOARD PURSUANT TO PREVIOUSLY EXISTING LAW?
As you explained in your letter, the Florida Board of Osteopathic Medical Examiners unconditionally revoked the license of a certain individual on March 27, 1979, pursuant to the law then in effect — to wit, Ch. 459, F.S. 1977. Subsection 459.14(3) of that law provided that, `[i]n its discretion, the board may restore and reissue a license to practice medicine, but, as a condition thereof, may impose any disciplinary or corrective measure which it might have imposed prior to the suspension or revocation of such license.' (e.s.) The clear implication of the above-emphasized language is that, when the board revoked this license, it had the authority to `restore and reissue' it.
When the Osteopathic Practice Act went through the Sunset review process during the 1979 legislative session, it was rewritten by the Legislature with the result that the abovequoted language is no longer in the statute. See, Ch. 79-230, Laws of Florida. The applicable language, now found in subsection 459.015(3), F.S., states that `[t]he board shall not reinstate the license of an osteopathic physician, or cause a license to be issued to a person it has deemed unqualified, until such time as it is satisfied that he has complied with all the terms and conditions set forth in the final order and that such person is capable of safely engaging in the practice of osteopathic medicine. . . .' You state that the board is unsure whether this new language permits it to consider a petition for reinstatement from an individual whose license was unconditionally revoked under the antecedent law.
Without deciding whether the present statutory language is susceptible of a construction that the board can consider a petition for reinstatement from a person whose license has been revoked, I am of the opinion that in the circumstances you decribe the board may consider a petition for reinstatement. The case of In re the Florida Bar: In re Bond, 301 So.2d 446 (Fla. 1974), stands for the rule that reinstatement proceedings should be conducted pursuant to the law as it existed at the time of the original descipline. In that case, the issue was whether the petitioner could apply for readmission to the Florida Bar under the rules which were in effect at the time when he resigned or whether he would have to apply under the rules as they had been subsequently amended. The court pointed out that to hold that he would have to apply under rules as they had been amended since his resignation could have the effect of increasing the penalty which had originally been imposed against him. Thus, the court ruled that his application for readmission should be processed under the rules in existence when he resigned. See also, In re the Florida Bar: In re Turk, 307 So.2d 162 (Fla. 1975), which applied the Bond
rationale to a case where the petitioner had been disbarred from the practice of law. Therefore, as s 459.14(3), F.S. 1977, purports to permit the board to restore and reissue a license which has been revoked and as it was that law which was in effect when the instant license was revoked, it is my opinion that the Board of Osteopathic Medical Examiners may consider the petition for reinstatement.
In conclusion, it is my opinion that the Board of Osteopathic Medical Examiners may consider a petition for reinstatement from an individual whose license was unconditionally revoked under a law then in force which also permitted the board to restore or reissue such a license even though that law has been subsequently repealed.
Sincerely,
Jim Smith, Attorney General
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General